UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RUFUS EDWARD JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-04745-JPH-DLP |
| | ) |
| PROPST, | ) |
| BAKER, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Rufus Edward Jones contends that Dr. Propst violated his constitutional rights by failing to provide him with timely and adequate medical care after Mr. Jones was injured in a transport van while he was a pretrial detainee at Jail II in Marion County, Indiana. He also contends that Nurse Baker violated his rights when she offered him Tylenol that had been crushed outside his presence. The defendants have moved for summary judgment. For the reasons discussed in this Order, the defendants' motion, dkt. [43], is **granted**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). Whether a party asserts that a

fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

The Court need consider only the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017).

In this case, Mr. Jones' response brief does not comply with the local rules because it does not include the required section labeled "Statement of Material Facts in Dispute" that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment. L.R. 56-1(e); *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) ("[T]he district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions."). Nor is his complaint or brief in opposition to summary judgment signed under penalty of perjury. Thus, the response brief and amended

2

complaint are inadmissible for purposes of defeating a motion for summary judgment. *See Owens v. Hinsley*, 635 F.3d 950, 954-55 (7th Cir. 2011) (noting that a verified response is "equivalent to an affidavit for purposes of summary judgment").

The defendants supported their motion for summary judgment with an affidavit from Dr. Propst, but did not initially provide the medical records his affidavit relied upon. Mr. Jones attached several pages of outside medical records to his response.[1] Dkt. 47-1 at 3-6. The defendants argued in their reply that the medical records were not properly authenticated. However, they did not put forth any reason to doubt the authenticity of the records. Dkt. 48 at 2-3. The Court gave both parties additional time to supplement their briefing. Dkt. 64. The defendants responded by providing the medical records Dr. Propst relied upon in his affidavit. Dkt. 65. Mr. Jones did not supplement his response, and the time to do so has passed.

While the evidence in this case is limited, the Court views that evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717

---

[1] The defendants' reply brief argues that the plaintiff's response was filed beyond the deadline of July 8, 2021, and that the plaintiff failed to serve a copy of his response on the defendants. Dkt. 48 at 1-2. The Court notes that plaintiff's response states that it was mailed on July 2, 2021. Dkt. 47 at 7. The response is postmarked July 9, 2021. Dkt. 47-2 at 1. Under the prison mailbox rule, the plaintiff's response was timely filed. *Taylor v. Brown*, 787 F.3d 851, 858–59 (7th Cir. 2015) (pleading is treated as being filed when it is handed over to prison staff for mailing). Furthermore, the defendants were notified by the Court's electronic filing system when the plaintiff filed his response, and the Court will consider the defendants' reply when ruling on their summary judgment motion. Thus, they have not been prejudiced by the plaintiff's failure to mail them a service copy of his response.

(7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). However, if the non-movant's evidence is "merely colorable" or "not significantly probative," then there is no genuine issue for trial and summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## II.
## Facts

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to the non-moving party with respect to each motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

On July 30, 2019, Mr. Jones reported that his back was injured while he was riding in the Sheriff's transport van. Medical Records, dkt. 65-1 at 2-6. He was treated by Nurse Ryan Wadsworth, who is not a defendant in this action. Nurse Wadsworth noted no visible injuries. *Id.* at 2. Mr. Jones was able to walk on his own and bend side to side. *Id.* at 6. He stated that he did not hit anything in the van, but that the van's jostling caused his prior back injury to flare up. *Id.* at 3-6. Nurse Wadsworth advised Mr. Jones to avoid heavy lifting and strenuous activity and to follow up if he did not improve within four days. *Id.* at 4. Mr. Jones was prescribed Motrin for four days. *Id.*

On August 5, 2019, Mr. Jones submitted a sick call request for an X-ray and CAT scan at a hospital. *Id.* at 8. In response, he was seen by Nurse Ricke on August 7, 2019. *Id.* at 10-13. Nurse Ricke is not a defendant in this action. Mr. Jones reported that his back still hurt and that he had a hernia he believed was caused by the van incident. *Id.* at 10; 13. Nurse Ricke noted that Mr. Jones was able to sit, stand, and complete daily life activities without assistance. *Id.* at 11. She consulted with Nurse Practitioner Reynolds, who ordered a routine lower back X-ray and discontinued the order for Motrin. *Id.* at 12. Mr. Jones was instructed to rest, purchase over the counter medications through commissary if necessary, and follow up if he did not improve within four days. *Id.*

Mr. Jones' back was X-rayed on August 8, 2019. *Id.* at 15. The X-ray revealed "no evidence for compression fracture or destructive process." *Id.* The radiologist recommended additional X-rays, but Nurse Practitioner Reynolds did not order additional X-rays. *Id.*

On August 13, 2019, Mr. Jones was unable to get off his bunk without assistance. *Id.* at 17-21. Nurse Ricke and Nurse Suhre assisted him into a wheelchair and took him to the jail's medical ward. *Id.* On August 13, 2019, Mr. Jones reported that he could not walk or stand up without pain. Nurse Ricke consulted with Dr. Propst, the jail's medical director. *Id.*; Propst Affidavit, dkt. 44-1 at ¶ 2. Dr. Propst ordered a Ketorolac injection (a nonsteroidal anti-inflammatory pain reliever), 10 days of ibuprofen, 14 days of methocarbamol (a muscle relaxer), and a cane for Mr. Jones. Dkt. 65-1 at 17-21; dkt. 44-1 at ¶¶ 7-9. Nurse Ricke also faxed record requests to OrthoIndy and St. Vincent Hospital

in an attempt to receive Mr. Jones' medical history. Dkt. 65-1 at 21. Medical records show that Mr. Jones received methocarbamol beginning on August 15, 2019, until he asked to stop taking it on May 18, 2020. *Id.* at 23-32.

Mr. Jones was seen by Nurse Fulano on August 17, 2019, after he submitted a sick call request. *Id.* at 36-39. Mr. Jones said that methocarbamol would not work and that he needed an MRI. *Id.* at 39. The nurse observed that Mr. Jones was walking with a cane but did not appear to be in acute distress. *Id.* She instructed him to avoid heavy lifting and strenuous work until the problem resolved. *Id.* at 37. Nurse Fulano is not a defendant in this action.

Mr. Jones was again seen by Nurse Ricke on August 19, 2019, when she responded to an emergency medical call. *Id.* at 43. Mr. Jones was lying on his bunk. He stated that his back pain made his hernia pop out. His blood pressure was 163/95, and 144/92 when it was taken a few minutes later. *Id.* Although he did not appear to be in acute distress, he had a 4.5 by 4-inch protruding hernia. *Id.* Nurse Ricke consulted with Dr. Propst who ordered a bottom bunk pass and hernia belt. *Id.* at 44; Dkt. 44-1 at ¶11. The next day, Nurse Ricke measured Mr. Jones for a hernia belt. Dkt. 65-1 at 47.

On August 26, 2019, Nurse Ricke gave Mr. Jones an abdominal binder to wear until the jail could receive a hernia belt from its supplier. *Id.* at 49. He received the hernia belt on September 5, 2019. *Id.* at 50-55.

Mr. Jones was next seen by Nurse Fulano on September 21, 2019, after he placed a sick call request regarding his hernia and back pain. *Id.* at 52-55. He reported that his hernia was much better. *Id.* at 55. He requested his medical

6

records and complained that his issues were ongoing and were not taken care of the day he placed his sick call request. *Id.* Nurse Fulano advised him to request his records by submitting the appropriate form and to return if his symptoms worsened or failed to subside. *Id.*

On September 24, 2019, a health services administrator spoke with Dr. Propst while responding to a grievance filed by Mr. Jones. Dkt. 47-1 at 8. Dr. Propst said that "an MRI is not indicated, but he will see [Mr. Jones] and have more X-rays and see if physical therapy is indicated." *Id.*

On October 7, 2019, Dr. Propst evaluated Mr. Jones. *Id.* at 57. Dr. Propst attempted to evaluate Mr. Jones' hernia, but Mr. Jones refused to remove his hernia belt. Mr. Jones reported that the belt helped reduce the hernia. *Id.* After examining Mr. Jones and his medical history, Dr. Propst ordered physical therapy. He also offered Mr. Jones a tricyclic medication to help with pain, but Mr. Jones declined. *Id.*; dkt. 44-1 at ¶ 15. Mr. Jones was transported to Eskenazi Hospital for three physical therapy sessions in November 2019, but he refused to comply with jail protocols to be transported to his January 2020 appointment. Dkt. 44-1 at ¶¶ 16-17; dkt. 65-1 at 59-61, 63. There is no evidence that Mr. Jones received additional X-rays.

Mr. Jones was seen by defendant Nurse Baker on October 10, 2019. Dkt. 65-1 at 65. He reported pain from his hernia and that he had been loosening his hernia belt. Nurse Baker ordered 650 mg of Tylenol three times per day for four days. *Id.* Mr. Jones' unsworn complaint alleged that Nurse Baker offered him a crushed white substance she said was Tylenol. He refused the medication

7

because it had been crushed outside his presence. Dkt. 1 at 19. He asserts that nurses were instructed to crush medication in front of inmates. *Id.* Jail policy requires medications to be crushed to avoid inmates concealing medications to be traded in general population. Dkt. 44-1 at ¶ 19.

Mr. Jones included several exhibits with his response, including reports of additional X-rays and an MRI from March 2021, after his release from custody. The imaging showed degenerative changes in his back and several disc bulges. Dkt. 47-1 at 3-6.

### III.
### Discussion

The defendants recognize that Mr. Jones was a pretrial detainee while under their care. Therefore, Mr. Jones's claim that Defendants' treatment decisions violated his rights is analyzed under the Fourteenth Amendment. "[A] pretrial detainee can prevail by providing objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015); *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018).

Under *Miranda*, the proper inquiry involves two steps. "The first step, which focuses on the intentionality of the individual defendant's conduct, [] 'asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of

8

[plaintiff's] case.'" *McCann v. Ogle County, Illinois*, 909 F.3d 881, 886 (7th Cir. 2018) (quoting *Miranda*, 900 F.3d at 353).

In the second step, a plaintiff must demonstrate that the defendant's conduct was objectively unreasonable. *Miranda*, 900 F.3d at 353. "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have violated the plaintiff's rights and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *McCann*, 909 F.3d at 886. "A detainee must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Miranda*, 900 F.3d at 353.

### A. Nurse Baker

Nurse Baker treated Mr. Jones on one occasion, providing him with crushed Tylenol for pain associated with his hernia. The Tylenol was crushed in line with jail policy to prevent inmates from concealing medication so that it can be traded with other inmates. Mr. Jones' unsworn complaint alleges that Nurse Baker crushed the Tylenol outside his presence, while jail policy instructed her to crush the medication in his presence. But Nurse Baker's alleged failure to follow jail policy does not, in and of itself, violate the Constitution. *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) ("Section 1983 protects against constitutional violations, not violations of ... departmental regulation and ... practices[.]") (internal quotation omitted).

While Nurse Baker knowingly crushed the medication outside the presence of Mr. Jones, there is no evidence that she did so with reckless

9

disregard for any potential negative consequence of her actions. There is no evidence in the record that Mr. Jones would have been harmed in any way by taking the crushed Tylenol. Nor is there any evidence in the record that crushing the medication would have interfered with its ability to treat his pain.

The *Miranda* standard requires this Court to consider the "totality of facts and circumstances" Nurse Baker faced and to gauge whether her response was reasonable. *McCann*, 909 F.3d at 886. Nurse Baker reasonably responded to Mr. Jones' complaint of hernia pain by providing him with Tylenol. Mr. Jones refused the crushed Tylenol because it was not crushed in his presence. The parties agree that Jail policy required that she crush the medication before giving it to him, although he argues that the policy also required her to crush the medication in his presence. Considering her treatment of Mr. Jones as a whole, no reasonable juror could conclude that it was objectively unreasonable for Nurse Baker to crush the Tylenol outside the presence of Mr. Jones. She is therefore entitled to summary judgment.

**B. Dr. Propst**

The designated evidence shows that Dr. Propst evaluated Mr. Jones on October 7, 2019, and was consulted by other medical providers about Mr. Jones' treatment on two occasions: August 13, 2019, and August 19, 2019. In response to the first consultation regarding Mr. Jones' back pain, Dr. Propst ordered an injection of an anti-inflammatory drug, a ten-day prescription for ibuprofen, a two-week prescription for a muscle relaxer, and a cane. Dkt. 44-1 at ¶¶ 7-9. In response to the second consultation regarding Mr. Jones' hernia, Dr. Propst

ordered a hernia belt and bottom bunk pass. *Id.* at ¶ 11; dkt. 65-1 at 44. Finally, when Dr. Propst evaluated Mr. Jones on October 7, 2019, Dr. Propst ordered off-site physical therapy, continued Mr. Jones' muscle relaxer prescription, and offered to order additional pain medication, but Mr. Jones refused it. *Id.* at ¶¶ 15-16.

Applying the *Miranda* standard to Dr. Propst's treatment of Mr. Jones, there is no evidence that he purposefully, knowingly, or recklessly disregarded potential negative consequences of his treatment decisions. Each time another provider consulted with him about Mr. Jones and each time he evaluated Mr. Jones himself, he placed orders for relevant treatments. No reasonable juror could find Dr. Propst's care of Mr. Jones to be objectively unreasonable.

Mr. Jones argues in his complaint that Dr. Propst failed to diagnose him until October 7, 2019, and then misdiagnosed him because Dr. Propst did not order an MRI before sending Mr. Jones for physical therapy. Dkt. 1 at 19. But the record reveals that Mr. Jones was treated by other providers on July 30, 2019, when his back injury flared up after the van incident. Those providers ordered Motrin and an X-ray of Mr. Jones' back. When Dr. Propst was later consulted about Mr. Jones's condition, he responded by placing several additional orders to treat Mr. Jones's pain. There is no evidence that Dr. Propst delayed treatment in any way.

In support of his argument that Dr. Propst misdiagnosed him, Mr. Jones submitted medical records from a private provider. Dkt. 47-1 at 3-6. These records indicate that in March 2021, nearly two years after the van incident,

images of Mr. Jones's lower back showed "multilevel degenerative changes" and bulging discs. *Id.* Dr. Propst treated Mr. Jones for back pain and there is no evidence before the Court that Mr. Jones suffered from these conditions in the fall of 2019. But even if Dr. Propst failed to diagnose degenerative changes or bulging discs in Mr. Jones' back, Dr. Propst's treatment of Mr. Jones was reasonable based on Mr. Jones' description of his pain and prior back injury, the X-ray ordered by another medical provider who is not a defendant in this action, and Dr. Propst's evaluation of Mr. Jones.

There is no evidence in the record that Mr. Jones' treatment plan changed in any way as a result of the additional imaging done in 2021. There is no dispute that Dr. Propst provided Mr. Jones with pain medication (including an injection of Ketorolac), muscle relaxers, physical therapy, and a cane. Mr. Jones does not put forward any evidence that he was harmed by the lack of any other treatment. His disagreement with Dr. Propst's treatment decisions "does not mean that the course of treatment was objectively unreasonable." *Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019).

In sum, no reasonable juror could find Mr. Propst's treatment of Mr. Jones to be objectively unreasonable. *See Miranda*, 900 F.3d at 353; *Gaston v. Beatty*, No. 17-CV-01798, 2020 WL 1288878, at *5 (N.D. Ill. Mar. 18, 2020) (granting summary judgment on claim that jail medical provider misdiagnosed kidney pain as back pain because provider reasonably relied on plaintiff's subjective report of pain and medical tests when diagnosing him).

## IV.
## Conclusion

For the reasons discussed above, the defendants' motion for summary judgment, dkt. [43], is **granted.** Final Judgment consistent with this Order and the Screening Order, dkt. [10], shall now issue.

**SO ORDERED.**

Date: 3/29/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

RUFUS EDWARD JONES
286965
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168

William A. Hahn
WILLIAM HAHN LAW LLC
Williamhahnlawllc@gmail.com